**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| POWER DISTRIBUTION, INC., <br><br>      Plaintiff, <br><br> vs. <br><br> DANAHER CORPORATION, <br><br>      Defendant. | **DEFENDANT'S MOTION TO DISMISS OR IN THE ALTERNATIVE TO TRANSFER TO THE EASTERN DISTRICT OF VIRGINIA** <br><br> Civil Action No.  1:07cv00351 <br><br> Judge Ellen Segal Huvelle |

Defendant Danaher Corporation ("Danaher"), by and through undersigned counsel, hereby moves the Court to Dismiss Power Distribution Inc.'s ("PDI") Complaint for Failure to State a Claim, or in the Alternative, to Transfer to the United States District Court for the Eastern District of Virginia, Richmond Division.

Danaher requests that this case be dismissed pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure because Plaintiff's Complaint alleges no basis on which Danaher can be held liable for the alleged acts of infringement of the '516 Patent.  As described in the Memorandum in Support filed concurrently herewith, Danaher's only connection to this action is that it is a third-tier parent company of Danaher Power Solutions, L.L.C. ("DPS"), the Richmond, Virginia-based developer, manufacturer, marketer, and seller of the accused product. Yet in its Complaint, PDI alleges no basis for holding Danaher liable for the alleged wrongful acts of DPS.

Alternatively, in the interest of justice and for the convenience of the parties and witnesses, Danaher respectfully requests that this Court transfer this case to the United States District Court for the Eastern District of Virginia, Richmond Division, pursuant to 28 U.S.C. §

1404(a), where a declaratory judgment action filed by DPS against PDI is already pending. There is no connection between this dispute and this District. Both PDI and DPS are based in Richmond, and all material events giving rise to this Complaint occurred in Richmond. DPS is neither registered to do business, nor does business in this District. None of the allegedly infringing activities took place in this District.

DANAHER CORPORATION

By Counsel

TROUTMAN SANDERS, LLP
1660 International Drive, Suite 600
McLean, Virginia 22102
(703) 734-4356

By:    __/s/ John F. Anderson_____
       John F. Anderson
       (D.C. Bar No. 393764)

Of Counsel:

David G. Mangum
PARSONS BEHLE & LATIMER
201 South Main Street, Suite 1800
Salt Lake City, UT 84111
(801) 532-1234

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| POWER DISTRIBUTION, INC., | **DEFENDANT'S MEMORANDUM IN SUPPORT OF ITS MOTION TO DISMISS OR, IN THE ALTERNATIVE, TO TRANSFER TO THE EASTERN DISTRICT OF VIRGINIA** |
| Plaintiff, | |
| vs. | |
| DANAHER CORPORATION, | Civil Action No.  1:07cv00351 |
| Defendant. | Judge Ellen Segal Huvelle |

Defendant Danaher Corporation ("Danaher"), by and through undersigned counsel, files this Memorandum in Support of Its Motion to Dismiss Power Distribution Inc.'s ("PDI") Complaint for Failure to State a Claim, or, in the Alternative, to Transfer to the United States District Court for the Eastern District of Virginia, Richmond Division.

Plaintiff PDI, a Virginia corporation with its principal place of business in Richmond, brought this patent infringement action against the wrong party in the wrong forum.  Instead of suing Danaher Power Solutions, L.L.C. ("DPS"), the Richmond, Virginia-based developer, manufacturer, marketer, and seller of the allegedly infringing product, PDI named Danaher as the Defendant.  Yet Danaher's only connection to DPS and the accused product is that it is a third-tier parent company of DPS.  In its Complaint, PDI alleges no basis for holding Danaher liable for the alleged wrongful acts of DPS.  PDI's error cannot be corrected by attempting to join DPS as a defendant in this action.  DPS is not subject to personal jurisdiction in this District, nor would venue lie against DPS in this District.

Moreover, this is manifestly not the proper forum for resolution of the dispute between PDI and DPS.  Both PDI and DPS are based in Richmond, Virginia, and nearly all of the events

3

giving rise to this Complaint occurred in Richmond. In addition, DPS has filed a declaratory judgment action against PDI pertaining to the patent-in-suit in the Richmond Division of the Eastern District of Virginia. That Court is the proper forum for resolution of this dispute.

PDI's Complaint against Danaher should be dismissed for failure to state a claim upon which relief can be granted under Fed. R. Civ. P. 12(b)(6). Alternatively, this case should be transferred to the United States District Court for the Eastern District of Virginia, Richmond Division, pursuant to 28 U.S.C. § 1404(a).

## BACKGROUND

On December 11, 2001, United States Patent No. 6,330,516 ("the '516 Patent") issued to John B. Kammeter, a PDI employee and resident of Sandston, Virginia. The '516 Patent is for an invention entitled "Branch Circuit Monitor." The '516 Patent generally relates to technology for monitoring power usage by a plurality of loads connected to a panel board or circuit breaker. The branch circuit monitor of the '516 Patent includes multiple non-contact current sensors mounted on one or more printed circuit boards positioned near to the panel board or circuit breaker. The electrical signals from the sensors flow through the conductive paths on the printed circuit boards, and then through ribbon cables that connect the circuit boards to a controller module or logic module. The logic module then makes various calculations based on the current measurements at the sensors. Mr. Kammeter assigned the '516 Patent to PDI.

In October 2005, Chris Tecca, President of DPS, inquired of PDI's President, Richard Combs, whether PDI would consider licensing the '516 Patent to DPS. Mr. Combs advised that PDI would not consider licensing the '516 Patent to DPS. Declaration of Chris Tecca, ¶ 5 (March 28, 2007) ("Tecca Decl.") (attached as Exhibit "A").

In the spring of 2006, under the direction of DPS managers and engineers located in its Richmond facility, DPS developed its CYBEREX® Branch Circuit Management system (the "CYBEREX® BCM system").  Tecca Decl. ¶ 6.  DPS's CYBEREX® BCM system included several differences from the branch circuit monitor claimed under the '516 Patent.  In particular, the CYBEREX® BCM system contains no circuit boards on to which any non-contact current sensors are mounted.  To the contrary, the non-contact current sensors in the CYBEREX® BCM system are mounted on a bare metal strip or bracket.  Further, separate from the metal mounting strip, the CYBEREX® BCM system utilizes a standard wiring harness connection to electrically connect the individual sensors to a logic module.  This mounting arrangement and separate electrical connection system provides several advantages over the branch monitor system claimed in the '516 Patent in that it facilitates field maintenance and upgradeability of the CYBEREX® BCM system by allowing for the addition and replacement of individual sensors, a feature which is not permitted by PDI's fixed component system.  Tecca Decl. ¶ 7.

Prior to publicly launching its CYBEREX® BCM system, DPS's President, Mr. Tecca, in October of 2006, visited PDI's Richmond offices and there advised PDI's President, Mr. Combs, of DPS's non-infringing CYBEREX® BCM system.  Messrs. Tecca and Combs did not discuss licensing the '516 Patent during this visit.  To the contrary, Mr. Tecca advised Mr. Combs that the CYBEREX® BCM system did not practice the invention of the '516 Patent and, therefore, no license was needed or wanted.  Tecca Decl. ¶ 8.

DPS launched its CYBEREX® BCM system at a trade show in November 2006.  A PDI official visited DPS's booth at the trade show.  In the ensuing weeks and months since that trade show, PDI personnel, including its President Mr. Combs repeatedly asserted both to DPS

5

personnel, including Mr. Tecca, and to current or potential DPS customers that the CYBEREX®
BCM system infringes the '516 Patent. Tecca Decl. ¶ 9.

On February 15, 2007, PDI filed this Complaint against Danaher. PDI sent the Summons
and Complaint by mail to Danaher's Senior Vice President and General Counsel on March 22,
2007. The Complaint alleges no basis for liability on the part of Danaher and merely identifies
DPS as "a wholly owned subsidiary of Danaher." Yet, as a completely separate corporation,
Danaher is legally distinct from DPS. DPS is a Delaware limited liability company, which is
wholly owned by Joslyn Holding Company, a Delaware corporation. Joslyn Holding Company
is in turn wholly owned by DH Holdings Corp., a Delaware corporation. Nearly all (199 of 201
shares) of DH Holdings Corp. are owned by Danaher. The other two shares of DH Holdings
Corp. are owned by Hennessy Canada, L.L.C., and Hennessy Industries Canada. Tecca Decl.
¶ 2. Danaher does not make, use, sell, advertise, market or license the CYBEREX® BCM
system, nor did Danaher have any involvement in the design, testing, or development of the
CYBEREX® BCM system. Tecca Decl. ¶ 10.

Despite this lack of connection to the CYBEREX® BCM system, PDI named Danaher,
not DPS, in the Complaint. PDI inexplicably chose to sue Danaher, not DPS, after meeting with
Mr. Tecca, the President of DPS, not Danaher. Further, DPS created the CYBEREX® BCM
system, and manufactures, markets, and sells the system from its Richmond facility. DPS has no
offices in and conducts no operations from the District of Columbia. None of the accused
products have been offered for sale or sold in the District of Columbia. Tecca Decl. ¶ 3. Indeed,
DPS is aware of no facts that would make it subject to suit in the District of Columbia.

On March 27, 2007, DPS filed a declaratory judgment action against PDI in the United States District Court for the Eastern District of Virginia, Richmond Division ("the Virginia action") and served PDI with the Complaint in the Virginia action on March 29, 2007.  (A copy of the Summons and Complaint served on PDI is attached as Exhibit "B" hereto.)  In the Virginia action, DPS seeks a judgment declaring that its CYBEREX® BCM system does not infringe the '516 Patent and a judgment declaring that the '516 Patent is invalid.

## ARGUMENT

### I. PLAINTIFF'S COMPLAINT SHOULD BE DISMISSED FOR FAILURE TO STATE A CLAIM PURSUANT TO RULE 12(B)(6).

This Court should dismiss PDI's Complaint pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief can be granted.  Even "read[ing] the [C]omplaint in a light most favorable to [the Plaintiff]," *Lindblom v. Mobile Telecomms. Tech. Corp.*, 985 F. Supp. 161, 163 (D.D.C. 1997), PDI's Complaint falls far short of stating a proper claim because it insufficiently and improperly connects Danaher to the purported infringement of which PDI complains.  This defect is fatal and cannot be cured by attempting to join DPS in this suit. Neither personal jurisdiction nor venue would lie in this District over DPS.  DPS has no offices in and conducts no operations from the District of Columbia, and none of the accused products have been offered for sale or sold in the District of Columbia.

PDI alleges no basis for liability on the part of Danaher, a separate legal entity and third-tier parent of DPS, and no such basis exists.  Generally, a parent corporation is not liable for the acts of its subsidiary.  *See Material Supply Int'l, Inc. v. Sunmatch Indus. Co.*, 62 F. Supp. 2d 13, 20 (D.D.C. 1999).  PDI has failed to plead any of the four tests—the "agency" test, the "alter ego" test, the "instrumentality" test, and the "integrated enterprise" test—applied by courts to

determine whether liability should be imposed on a parent for a subsidiary's actions. *Id.* "All four tests are ultimately concerned with resolving the same question: whether the parent corporation 'so dominated the [subsidiary] corporation as to negate its separate personality.'" *Id.* (quoting *Hart v. Dep't of Agric.*, 112 F.3d 1228, 1231 (D.C. Cir. 1997) (alteration in original)).

A two-part inquiry is undertaken to determine whether a subsidiary has retained its separate personality. First, the court asks whether there is "such unity of interest and ownership that the separate personalities" of the two companies no longer exist. *Id.* (quotation omitted). Second, the court asks "whether an inequitable result will follow if the court treats [the subsidiary's] wrongful acts as those of [the parent] alone." *Id.* (quotation omitted). The first part of the test—unity of interest—occurs where the parent has taken "active and substantial" control of the subsidiary, which may be shown by: the nature of the corporate ownership and control, failure of the subsidiary to maintain corporate minutes or records, failure of the subsidiary to maintain corporate formalities, commingling of funds and assets, diversion of one corporation's funds to the other's uses, and use of the same office or business location. *Id.* Once unity of interest and ownership is shown, the court examines the second part of the test—inequitable result—which asks whether disregarding the corporate entity is in the interest of public convenience, fairness and equity." *Id.* at 21. "[E]quity counsels piercing the veil whenever adherence to the fiction of the separate existence of the corporation would sanction a fraud or promote injustice." *Id.* (quotations omitted).

In the present case, PDI has not and cannot demonstrate that there is a unity of interest between Danaher and DPS. PDI has not alleged, nor can it allege, any facts justifying ignoring DPS's (or for that matter Joslyn Holding Company and DH Holdings Corp.'s) separate legal

entity status. Danaher and DPS operate out of separate offices. They do not commingle funds or assets. They have distinct management structures and have complied with all required corporate formalities. Tecca Decl. ¶ 11.

In addition, rather than alleging the necessary domination and unity required for liability on the part of Danaher, PDI's Complaint actually acknowledges the fact that DPS is the party responsible for the alleged infringement. PDI alleges that "[o]n October 6, 2006, Chris Tecca, President of Danaher Power Solutions, LLC, Richmond, Virginia, a wholly owned subsidiary of Danaher, visited the office of PDI President Richard Combs to discuss licensing the '516 patent." Compl. ¶ 10. In fact, the closest PDI's Complaint comes to alleging liability on the part of Danaher is the statement that DPS is a "wholly owned subsidiary of Danaher." *Id.* Yet this allegation, standing alone, is insufficient to support liability for the acts of DPS. *Cf. Lindblom*, 985 F. Supp. at 163 ("A wholly owned corporate subsidiary of a corporate parent is not liable for the deceitful statements of its parent corporation."). Therefore, the Complaint fails to state a claim under Fed. R. Civ. P. 12(b)(6) and must be dismissed. *See Caribbean Broad. Sys., Ltd. v. Cable & Wireless P.L.C.*, 148 F.3d 1080, 1088 (D.C. Cir. 1998) (dismissing count for failure to state a claim because plaintiff had inadequately alleged the necessary control of company by separate corporation that was merely involved in joint project with company); *Lindblom*, 985 F. Supp. at 164 (dismissing under Rule 12(b)(6) because, in fraud case, plaintiff had failed to sufficiently allege that subsidiary corporation named as defendant committed wrongful acts along with parent corporation).

Even assuming that PDI could show the requisite unity of interest between Danaher and DPS, PDI cannot demonstrate that any inequitable result would follow if it were precluded from

proceeding with this suit against Danaher.  DPS is the corporation responsible for committing the acts that PDI alleges are wrongful, including developing, marketing, selling, and distributing the accused product.  Accordingly, the relief PDI seeks could only come from an action with DPS, and no fraud or injustice will result if this suit against Danaher is dismissed.

Nor can the defects in PDI's Complaint against Danaher be cured by now attempting to make DPS a party to this lawsuit.  DPS is not subject to personal jurisdiction in this Court.  It is neither registered to do business, nor does business in the District of Columbia.  None of the allegedly infringing products have been made, used, sold or offered for sale here.  Moreover, an avenue for PDI to pursue its claims against DPS already exists as a result of the declaratory judgment action brought by DPS against PDI in the Eastern District of Virginia, Richmond Division, where both PDI and DPS are headquartered, and where all of the significant activities giving rise to the dispute between PDI and DPS occurred.

## II.    AS AN ALTERNATIVE TO DISMISSAL, THE COURT SHOULD TRANSFER THIS ACTION TO THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF VIRGINIA WHERE DPS' DECLARATORY JUDGMENT ACTION IS ALREADY PENDING.

If this Court does not dismiss the Complaint for failure to state a claim, DPS requests that this action be transferred to the United States District Court for the Eastern District of Virginia, Richmond Division, where both DPS and PDI are headquartered and where the events giving rise to this litigation took place and the relevant witnesses are located.  DPS has already filed a declaratory judgment action in that Court, and that Court is better suited to resolve this conflict.  Indeed, the transferred action could properly be consolidated with that pending action.

28 U.S.C. § 1404(a) provides that, "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division

where it might have been brought." This section vests "discretion in the district court to adjudicate motions to transfer according to individualized, case-by-case consideration of convenience and fairness." *Liban v. Churchey Group II, L.L.C.*, 305 F. Supp. 2d 136, 139 (D.D.C. 2004) (quotations omitted). The defendant must make two showings before transfer will be granted: first, that the "plaintiff originally could have brought the action in the proposed transferee district," and second, that "considerations of convenience and the interest of justice weigh in favor of transfer to that court." *Id.* In examining the second showing, courts examine a number of private interest factors, including

> (1) the plaintiff's choice of forum, unless the balance of convenience is strongly in favor of the defendants; (2) the defendants' choice of forum; (3) whether the claim arose elsewhere; (4) the convenience of the parties; (5) the convenience of the witnesses, but only to the extent that the witnesses may actually be unavailable for trial in one of the fora; and (6) the ease of access to the sources of proof.

*Id.* Courts also examine several public interest factors, including: "(1) the transferee's familiarity with the governing laws; (2) the relative congestion of the calendars of the potential transferee and transferor courts; and (3) the local interest in deciding local controversies at home." *Id.*

As to the first showing, there is no doubt that PDI could have brought this action in the Eastern District of Virginia, Richmond Division. Both PDI and DPS are headquartered in Richmond; in fact their corporate offices are located less than four miles apart. Tecca Decl. ¶ 4. Venue is proper in the Eastern District of Virginia under 28 U.S.C. § 1391(b)(1) & (c) because DPS resides there; under 28 U.S.C. § 1391(b)(2) because "a substantial part of the events or omissions giving rise to the claim occurred" in Richmond; and under 28 U.S.C. § 1400(b) because "[a]ny civil action for patent infringement may be brought in the judicial district where

the defendant resides, or where the defendant has committed acts of infringement and has a regular and established place of business." The events giving rise to this action undisputedly took place in Richmond. Both PDI and DPS are headquartered in Richmond. The inventor, Mr. Kammeter, a PDI employee, resides in the Richmond Division of the Eastern District of Virginia. The CYBEREX® BCM system was developed primarily in Richmond, is manufactured in Richmond, and is sold and distributed from Richmond.

As to the second showing, the private interest and public interest factors weigh heavily in favor of transfer. While the "[p]laintiff's choice of forum traditionally receives deference, . . . diminished consideration [is] accorded to a plaintiff's choice of forum where . . . that forum has no meaningful ties to the controversy," *Payne v. Giant of Md., L.L.C.*, No. 05-897, 2006 WL 1793303, at *3 (D.D.C. June 28, 2006) (first alteration added), and where "the plaintiff is not a resident of the chosen forum," *Liban*, 305 F. Supp. 2d at 141-42 (citing *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 255-56 (1981)). Here, the District of Columbia has no connection to the controversy. In fact, even Plaintiff PDI, a Virginia corporation with its principal place of business in Richmond, is not a resident of this District.

Second, the claim arose in Richmond because that is where the accused product was primarily developed, where it has always been manufactured, and from where it is sold. Finally, Richmond is the most convenient forum for the parties and potential witnesses, and sources of proof would be readily accessible in Richmond. Again, both PDI and DPS are headquartered in Richmond, the majority of relevant employees work in Richmond, the inventor of the '516 Patent lives near Richmond and works at PDI in Richmond, and all or nearly all of the

documents relating to the '516 Patent and the accused CYBEREX® BCM system are located in Richmond.

The public interest would also be served by transferring this case to Virginia. There is no reason to believe that the Eastern District of Virginia would not be as familiar with the governing patent laws as would this Court. Moreover, data from the Administrative Office of the U.S. Courts shows that the Eastern District of Virginia has a much less congested calendar than the District of Columbia. *See* Table C-5, U.S. District Courts—Median Time Intervals from Filing to Disposition of Civil Cases, attached hereto as Ex. "C" (showing that average number of months from filing the Complaint to trial is 36 in the District of Columbia and 9.8 in the Eastern District of Virginia). Finally, because this controversy involves two Richmond companies, a strong local interest exists for deciding this controversy in Richmond. In sum, the foregoing analysis of all of the factors points to the conclusion that the interest of justice would be served by transferring this action to the Eastern District of Virginia, Richmond Division.

## <u>CONCLUSION</u>

For all of the foregoing reasons, Defendant Danaher respectfully requests that this Court grant its Motion to Dismiss for Failure to State a Claim, or in the Alternative, to Transfer to the Eastern District of Virginia.

DANAHER CORPORATION

By Counsel

TROUTMAN SANDERS, LLP
1660 International Drive, Suite 600
McLean, Virginia  22102
(703) 734-4356

By:    __/s/ John F. Anderson_____
        John F. Anderson
        (D.C. Bar No. 393764)

Of Counsel:

David G. Mangum
PARSONS BEHLE & LATIMER
201 South Main Street, Suite 1800
Salt Lake City, UT 84111
(801) 532-1234

# EXHIBIT A

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| POWER DISTRIBUTION, INC., | **DECLARATION OF CHRIS TECCA** |
| Plaintiff, | Civil Action No. 1:07cv00351 |
| vs. | Judge Ellen Segal Huvelle |
| DANAHER CORPORATION, | |
| Defendant. | |

Declarant Chris Tecca deposes and states as follows:

1.    I am over the age of 18. I have personal knowledge of the facts attested to below and, if called to testify, could and would competently testify to such facts.

2.    I am the President of Danaher Power Solutions, L.L.C. ("DPS"), a Delaware limited liability company headquartered in Richmond, Virginia. DPS is wholly owned by Joslyn Holding Company, a Delaware corporation. Joslyn Holding Company is in turn wholly owned by DH Holdings Corp., a Delaware corporation. Nearly all of the shares (199 of 201) of DH Holdings Corp. are owned by Danaher Corporation ("Danaher"), the Defendant in this action. The other two shares of DH Holdings Corp. are owned by Hennessy Canada, L.L.C., and Hennessy Industries Canada.

3.    DPS is not registered to do business in the District of Columbia. DPS has no offices in and conducts no operations from the District of Columbia. None of the accused products have been offered for sale or sold in the District of Columbia.

4.    Power Distribution, Inc. ("PDI"), Plaintiff in this action, is also headquartered in Richmond, Virginia, and its corporate offices are located less than 10 miles away from DPS' corporate offices.

5.    In October 2005, I inquired of PDI's President, Richard Combs, whether PDI would consider licensing United States Patent No. 6,330,516 ("the '516 Patent") to DPS. Mr. Combs advised that PDI would not consider licensing the '516 Patent to DPS.

6.    In the spring of 2006, under the direction of DPS managers and engineers located at its Richmond facility, DPS developed its CYBEREX® Branch Circuit Management system (the "CYBEREX® BCM system").

7.    DPS' CYBEREX® BCM system is different from PDI's branch circuit monitor as claimed in the '516 Patent. In particular, the non-contact current sensors in the CYBEREX® BCM system are mounted on a bare metal strip or bracket rather than on circuit boards. Further, separate from the metal mounting strip, the CYBEREX® BCM system utilizes a standard wiring harness connection to electrically connect the individual sensors to a logic module. This mounting arrangement and separate electrical connection system facilitates field maintenance and upgradeability of the CYBEREX® BCM system by allowing for the addition and replacement of individual sensors, a feature which is not permitted by PDI's fixed component system.

8.    In October 2006, prior to publicly launching the CYBEREX® BCM system, I visited PDI's Richmond offices and advised Mr. Combs of the CYBEREX® BCM system. We did not discuss licensing the '516 Patent during this visit. I advised Mr. Combs that the CYBEREX® BCM system did not practice the invention of the '516 Patent, and, therefore, no license was needed or wanted.

9.    DPS launched its CYBEREX® BCM system at a trade show in November 2006. A PDI official visited DPS' booth at the trade show. Since that trade show, PDI personnel,

including Mr. Combs, have repeatedly asserted both to me and other DPS personnel and to current or potential DPS customers that the CYBEREX® BCM system infringes the '516 patent.

10. The CYBEREX® BCM system is exclusively manufactured and distributed by DPS from its Richmond, Virginia facility. Danaher does not make, use, sell, advertise, market, or license the CYBEREX® BCM system. Further, Danaher did not have any involvement in the design, testing, or development of the CYBEREX® BCM system.

11. Danaher and DPS operate out of separate offices. They do not commingle funds or assets, have distinct management structures, and, to my knowledge, have complied with all required corporate formalities.

Pursuant to 28 U.S.C. § 1746(2), I declare under penalty of perjury of the laws of the United States of America that the foregoing is true and correct.

Executed this 28th day of March, 2007

Chris Tecca

# EXHIBIT B



### IN THE UNITED STATES DISTRICT COURT
### FOR THE EASTERN DISTRICT OF VIRGINIA
### Richmond Division

DANAHER POWER SOLUTIONS, L.L.C.,  )
                )
       Plaintiff,         )
                )
       v.           )   Civil Action No. 3 07CV167
                )
POWER DISTRIBUTION, INC.,      )
                )
       Defendant.      )
                )

### COMPLAINT

Plaintiff Danaher Power Solutions, L.L.C., by counsel, alleges as follows:

1.     This is an action for a declaratory judgment of patent non-infringement and invalidity brought pursuant to 28 U.S.C. §§ 2201 and 2202 and Federal Rule of Civil Procedure 57, between two parties headquartered in Richmond, Virginia, relating to U.S. Patent No. 6,330,516 entitled "Branch Circuit Monitor," issued to an inventor who resides in Sandston, Virginia in Henrico County in this District and assigned to Defendant Power Distribution, Inc., a Virginia corporation with principal place of business in Henrico County located at 4200 Oakleys Court, Richmond, Virginia. The accused CYBEREX® Branch Circuit Management system, as to which Plaintiff seeks a declaration of non-infringement, is manufactured exclusively at and distributed from Plaintiff's corporate headquarters, also located in Henrico County in this District at 5900 Eastport Blvd., Richmond, Virginia.

RECEIVED & FILED
CIRCUIT COURT

MAR 2 7 2007

BEVILL M. DEAN, CLERK
BY               D.C.

## PARTIES

2.      Plaintiff Danaher Power Solutions, L.L.C. ("DPS"), is a Delaware limited liability company with its headquarters and principal place of business located at 5900 Eastport Blvd., Richmond, Virginia 23231. At its Richmond facility, DPS manufactures power protection equipment that protects critical points in the electrical infrastructure for datacenters and other commercial and industrial customers. Among the products manufactured at the Richmond facility, is DPS' CYBEREX® Branch Circuit Management system, which Defendant Power Distribution, Inc. alleges to infringe its patent. DPS is wholly owned by Joslyn Holding Company, a Delaware corporation, which is in turn wholly owned by DH Holdings Corp., a Delaware corporation. Nearly all (199 of 201 shares) of DH Holdings Corp. are owned by Danaher Corporation, a Delaware corporation, which is a publicly traded entity. The other two shares of DH Holdings Corp. are owned by Hennessy Canada LLC and Hennessy Industries Canada, respectively.

3.      Defendant Power Distribution, Inc. ("PDI") is a corporation organized and existing under the laws of the Commonwealth of Virginia, and has a principal place of business at 4200 Oakleys Court, Richmond, Virginia 23223. On information and belief, PDI conducts its research and development, manufacturing, and sales operations from its Richmond headquarters.

## JURISDICTION AND VENUE

4.      This Court has jurisdiction over this case pursuant to 28 U.S.C. §§ 1331 and 1338(a).

5.      Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) and (c).

## GENERAL ALLEGATIONS

6.    On December 11, 2001, United States Patent No. 6,330,516 ("the '516 Patent")

issued to John B. Kammeter, a PDI employee and resident of Sandston, Virginia. The '516

Patent is for an invention entitled "Branch Circuit Monitor." The patent generally relates to

technology for monitoring power usage by a plurality of loads connected to a panel board or

circuit breaker. The branch circuit monitor of the '516 Patent includes multiple non-contact

current sensors mounted on one or more printed circuit boards positioned near to the panel board

or circuit breaker. The electrical signals from the sensors flow through the conductive paths on

the printed circuit boards, and then through ribbon cables that connect the circuit boards to a

controller module or logic module. The logic module then makes various calculations based on

the current measurements at the sensors.

7.    Mr. Kammeter assigned the '516 Patent to PDI. PDI now owns the '516 Patent

and sells a branch circuit monitor product purportedly covered by the '516 Patent.

8.    In October of 2005, Chris Tecca, President of DPS, inquired of PDI's President,

Richard Combs, at the AFCOM industry trade event in Chicago, Illinois, whether PDI would

consider licensing the '516 Patent to DPS. Mr. Combs advised that PDI would not consider

licensing the '516 Patent.

9.    In the spring of 2006, under the direction of DPS managers and engineers located

in its Richmond facility, DPS developed its CYBEREX® Branch Circuit Management system

(the "CYBEREX® BCM system"). DPS' CYBEREX® BCM system included several

differences from and improvements over the branch circuit monitor claimed in the '516 Patent.

In particular, the CYBEREX® BCM system contains no circuit boards on to which any non-

contact current sensors are mounted. To the contrary, the non-contact current sensors in the

3

CYBEREX® BCM system are mounted on a bare metal strip or bracket. Further, separate from the metal mounting strip, the CYBEREX® BCM system utilizes a standard wiring harness connection to electrically connect the individual sensors to a logic module. This mounting arrangement and separate electrical connection system provides several advantages over the branch monitor system claimed in the '516 Patent in that it facilitates field maintenance and upgradeability of the CYBEREX® BCM system by allowing for the addition and replacement of individual sensors, a feature which is not permitted by PDI's fixed component system.

10.    Prior to publicly launching its CYBEREX® BCM system, DPS' President, Mr. Tecca, in October of 2006, visited PDI's Richmond offices and there advised PDI's President, Mr. Combs, of DPS' non-infringing CYBEREX® BCM system. Messrs. Tecca and Combs did not discuss licensing the '516 Patent during this visit. To the contrary, Mr. Tecca advised Mr. Combs that the CYBEREX® BCM system did not practice the invention of the '516 Patent and, therefore, that no license was needed or wanted.

11.    DPS launched its CYBEREX® BCM system at a trade show in November 2006. A PDI official visited DPS' booth at the trade show. In the ensuing weeks and months since that trade show, PDI personnel, including its President Mr. Combs repeatedly asserted both to DPS personnel, including Mr. Tecca, and to current or potential DPS customers that the CYBEREX® BCM system infringes the '516 Patent. Among other things, Mr. Combs, in communications with Mr. Tecca, threatened to sue DPS for patent infringement.

12.    Rather than file suit against DPS as threatened, on February 15, 2007, PDI filed a Complaint in the United States District Court for the District of Columbia (the "D.C. Complaint") against Danaher Corporation, a legally distinct and third-tier parent company of DPS headquartered in the District of Columbia. Danaher Corporation does not manufacture or

4

distribute the accused CYBEREX® BCM system, and the D.C. Complaint alleges no basis for liability on the part of Danaher Corporation. To the contrary, the D.C. Complaint identifies DPS as "a wholly owned subsidiary of Danaher [Corporation]" and appears to recognize that the accused product was offered for sale by DPS, not Danaher.

13.    DPS is a separate legal entity from Danaher Corporation, the entity named in the D.C. Complaint filed by PDI. DPS has no offices in and conducts no operations from the District of Columbia. It is not registered to do business in the District of Columbia. None of the accused products have been offered for sale or sold in the District of Columbia. Significantly, PDI did not name DPS as a defendant in the D.C. Complaint.

14.    The D.C. Complaint was not immediately served on Danaher Corporation. Rather, on February 16, 2007, PDI's litigation counsel sent a copy of the D.C. Complaint to Danaher Corporation's Senior Vice President and General Counsel, Jonathan P. Graham, inviting a discussion before serving the D.C. Complaint.

15.    On March 12, 2007, representatives of DPS met with PDI's litigation counsel in the Alexandria, Virginia offices of PDI's litigation counsel. Both at that meeting and in a subsequent email communication on March 13, 2007, DPS representatives explained why DPS' CYBEREX® BCM system does not infringe the '516 Patent.

16.    Nonetheless, in correspondence dated March 16, 2007, PDI continued to accuse DPS' CYBEREX® BCM system of infringement of the '516 Patent and threatened to serve Danaher Corporation unless the product were removed from the market and damages paid. The D.C. Complaint, along with a Summons from the United States District Court for the District of Columbia, were sent by mail to Danaher Corporation's Senior Vice President and General

Counsel on March 21, 2007. Of course, Plaintiff DPS, which was not named in the D.C. Complaint, also has not been served

17.    Despite PDI's failure to bring suit against DPS, there is an actual, substantial and continuing justiciable case or controversy between DPS and PDI regarding the infringement and validity of the '516 Patent. In fact, although such is not necessary for this Court to have jurisdiction over this action, DPS reasonably apprehends and anticipates that it will face suit for infringement of the '516 Patent.

**FIRST CLAIM FOR RELIEF**
**(Declaratory Action for Determination of Non-Infringement)**

18.    DPS incorporates by reference, as if fully set forth herein, all preceding paragraphs of this Complaint.

19.    As a result of the actions and accusations detailed above, an actual and present controversy exists between DPS and PDI as to whether DPS' CYBEREX® BCM system infringes the '516 Patent owned by PDI.

20.    DPS' CYBEREX® BCM system does not infringe any claims of the '516 Patent.

21.    DPS is entitled to a judgment declaring that its CYBEREX® BCM system does not infringe any claim in the '516 Patent.

22.    DPS has suffered damage, injury, and harm from PDI's conduct, including but not limited to the taint placed on DPS' CYBEREX® BCM system and DPS in general as a result of PDI's baseless claims of infringement, and DPS will suffer further damage, injury, and harm unless the Court adjudicates the controversy between the parties and issues a declaratory judgment of non-infringement of the '516 Patent.

**SECOND CLAIM FOR RELIEF**

**(Declaratory Action for Determination of Patent Invalidity)**

23.    DPS incorporates by reference, as if fully set forth herein, all preceding paragraphs of this Complaint.

24.    As a result of the actions and accusations detailed above, an actual and present controversy exists between DPS and PDI with respect to the validity of the '516 Patent.

25.    The claims of PDI's '516 Patent, individually or collectively, are invalid for failure to comply with the requirements of United States patent laws, and in particular for failure to comply with 35 U.S.C. §§ 101, 102, 103, and/or 112.

26.    DPS is entitled to a judgment declaring that the claims in the '516 Patent are invalid.

27.    DPS has suffered damage, injury, and harm from PDI's conduct, including but not limited to the taint placed on DPS' CYBEREX® BCM system and DPS in general as a result of PDI's baseless claims of infringement, and DPS will suffer further damage, injury, and harm unless the Court adjudicates the controversy between the parties and issues a declaratory judgment of invalidity of the claims in the '516 Patent.

## JURY DEMAND

28.    DPS demands a trial by jury on all of the claims in this Complaint that may be tried to a jury.

WHEREFORE, DPS prays for Judgment as follows:

1.    On its First Claim for Relief, for a declaratory judgment that DPS has not infringed PDI's '516 Patent;

2.    On its Second Claim for Relief, for a declaratory judgment that one or more of the claims in the '516 Patent are invalid;

3.    That the Court find this case exceptional and award DPS its attorneys' fees, costs, and expenses against PDI pursuant to 35 U.S.C. § 285; and

4.    That this Court award DPS such other and further relief as the Court deems just and proper.

Dated this 27th day of March, 2007

DANAHER POWER SOLUTIONS, L.L.C.

By _____
Of Counsel

Dabney J. Carr, IV, VSB #28679
Robert A. Angle, VSB #37691
TROUTMAN SANDERS LLP
P. O. Box 1122
Richmond, Virginia 23218-1122
(804) 697-1200
(804) 697-1339 (Fax)

David G. Mangum (pro hac vice pending)
C. Kevin Speirs (pro hac vice pending)
Michael R. McCarthy (pro hac vice pending)
Nicole G. Farrell (pro hac vice pending)
PARSONS BEHLE & LATIMER
201 South Main Street, Suite 1800
Salt Lake City, UT 84111
Telephone: (801) 532-1234
Facsimile: (801) 536-6111

Attorneys for Plaintiff Danaher Power Solutions, L.L.C.

%AO 440 (Rev. 8/01) Summons in a Civil Action

# UNITED STATES DISTRICT COURT

| EASTERN | District of | VIRGINIA |
| --- | --- | --- |

## Richmond Division

DANAHER POWER SOLUTIONS, L.L.C.

V.

POWER DISTRIBUTION, INC.

**SUMMONS IN A CIVIL CASE**

CASE NUMBER:   3:07CV167

*FILE COPY*

TO: (Name and address of Defendant)

Power Distribution, Inc.
c/o Richard A. Combs, Registered Agent
4200 Oakleys Court
Richmond, VA 23223-9100

**YOU ARE HEREBY SUMMONED** and required to serve on PLAINTIFF'S ATTORNEY (name and address)

Robert A. Angle
Troutman Sanders LLP
1001 Haxall Point
P. O. Box 1122
Richmond, VA 23218-1122

an answer to the complaint which is served on you with this summons, within twenty (20) days days after service of this summons on you, exclusive of the day of service. If you fail to do so, judgment by default will be taken against you for the relief demanded in the complaint. Any answer that you serve on the parties to this action must be filed with the Clerk of this Court within a reasonable period of time after service.

| FERNANDO GALINDO, Acting Clerk | | March 28, 2007 |
| --- | --- | --- |
| CLERK | | DATE |

(By) DEPUTY CLERK

# EXHIBIT C

Table C-5.
U.S. District Courts—Median Time Intervals From Filing to Disposition of Civil Cases
Terminated, by District and Method of Disposition,
During the 12-Month Period Ending September 30, 2006

| Circuit and District | Total Cases | | No Court Action | | Court Action | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | Before Pretrial | | During or After Pretrial | | Trial | |
| | Number of Cases | Median Time Interval in Months | Number of Cases | Median Time Interval in Months | Number of Cases | Median Time Interval in Months | Number of Cases | Median Time Interval in Months | Number of Cases | Median Time Interval in Months |
| TOTAL | 213,494 | 8.3 | 46,137 | 6.3 | 124,497 | 7.2 | 37,654 | 33.9 | 3,206 | 23.5 |
| DC | 2,122 | 10.2 | 943 | 11.5 | 1,112 | 10.2 | 32 | 17.5 | 35 | 36.0 |
| 1ST | 5,425 | 9.9 | 2,043 | 7.9 | 2,366 | 8.3 | 854 | 15.9 | 162 | 23.0 |
| ME | 367 | 7.7 | 182 | 5.7 | 164 | 7.3 | 25 | 14.0 | 16 | 14.0 |
| MA | 2,904 | 9.0 | 1,424 | 8.5 | 1,005 | 8.3 | 381 | 15.5 | 94 | 25.0 |
| NH | 408 | 8.7 | 127 | 4.4 | 116 | 6.7 | 162 | 14.8 | 3 | - |
| RI | 486 | 8.9 | 79 | 4.6 | 254 | 7.5 | 137 | 11.7 | 16 | 15.0 |
| PR | 1,260 | 12.8 | 251 | 9.0 | 827 | 10.9 | 149 | 21.0 | 33 | 31.0 |
| 2ND | 17,992 | 9.2 | 5,210 | 7.5 | 10,200 | 8.3 | 2,280 | 15.4 | 302 | 28.5 |
| CT | 1,939 | 11.6 | 1,304 | 9.5 | 527 | 15.9 | 59 | 23.7 | 49 | 30.0 |
| NY,N | 928 | 13.3 | 202 | 6.1 | 431 | 11.6 | 266 | 18.4 | 29 | 30.0 |
| NY,E | 5,216 | 10.5 | 1,044 | 7.2 | 3,244 | 9.8 | 852 | 18.1 | 76 | 31.0 |
| NY,S | 8,473 | 8.3 | 2,343 | 7.4 | 5,053 | 8.0 | 945 | 11.4 | 132 | 24.0 |
| NY,W | 1,167 | 10.9 | 294 | 6.1 | 712 | 10.0 | 151 | 24.0 | 10 | 53.0 |
| VT | 269 | 8.8 | 23 | 5.0 | 233 | 8.4 | 7 | - | 6 | - |
| 3RD | 37,146 | 1.0 | 3,984 | 5.8 | 29,806 | 1.0 | 3,024 | 13.0 | 332 | 23.1 |
| DE | 1,014 | 16.8 | 137 | 13.3 | 640 | 13.4 | 191 | 19.5 | 46 | 33.0 |
| NJ | 5,228 | 8.2 | 1,607 | 5.9 | 2,115 | 5.1 | 1,439 | 14.2 | 67 | 31.0 |
| PA,E | 26,892 | 1.0 | 1,020 | 3.1 | 24,300 | 1.0 | 1,256 | 10.6 | 116 | 16.2 |
| PA,M | 1,702 | 5.9 | 556 | 4.9 | 1,048 | 6.0 | 51 | 17.2 | 47 | 22.0 |
| PA,W | 2,245 | 8.3 | 625 | 5.5 | 1,512 | 9.5 | 54 | 25.8 | 54 | 25.5 |
| VI | 265 | 20.0 | 39 | 8.0 | 191 | 20.5 | 33 | 36.0 | 2 | - |
| 4TH | 12,622 | 7.6 | 3,548 | 6.0 | 7,740 | 8.4 | 1,125 | 9.9 | 211 | 19.5 |
| MD | 2,649 | 7.4 | 1,284 | 7.5 | 1,128 | 6.9 | 188 | 13.3 | 49 | 23.0 |
| NC,E | 929 | 12.5 | 439 | 11.4 | 478 | 13.9 | 3 | - | 8 | - |
| NC,M | 733 | 11.0 | 204 | 6.0 | 361 | 12.1 | 158 | 13.4 | 10 | 23.0 |
| NC,W | 826 | 9.8 | 330 | 11.5 | 407 | 8.1 | 82 | 14.4 | 7 | - |
| SC | 2,795 | 9.5 | 376 | 4.0 | 2,211 | 9.8 | 156 | 13.5 | 52 | 23.5 |
| VA,E | 2,583 | 5.9 | 566 | 3.7 | 1,460 | 4.2 | 512 | 7.7 | 45 | 9.8 |
| VA,W | 724 | 8.6 | 160 | 7.4 | 533 | 8.6 | 12 | 8.0 | 19 | 14.0 |
| WV,N | 421 | 11.7 | 151 | 8.7 | 256 | 13.3 | 8 | - | 6 | - |
| WV,S | 962 | 8.7 | 36 | 4.8 | 906 | 8.7 | 6 | - | 14 | 18.0 |

# Table C-5. (September 30, 2006—Continued)

| Circuit and District | Total Cases | | No Court Action | | Court Action | | | | | |
| --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- |
| | | | | | Before Pretrial | | During or After Pretrial | | Trial | |
| | Number of Cases | Median Time Interval in Months | Number of Cases | Median Time Interval in Months | Number of Cases | Median Time Interval in Months | Number of Cases | Median Time Interval in Months | Number of Cases | Median Time Interval in Months |
| **5TH** | **21,564** | **8.8** | **5,644** | **6.6** | **13,396** | **8.2** | **2,138** | **13.6** | **406** | **20.5** |
| LA,E | 2,598 | 11.6 | 105 | 3.2 | 1,322 | 7.3 | 1,115 | 15.5 | 56 | 21.0 |
| LA,M | 1,199 | 6.4 | 611 | 6.8 | 560 | 11.7 | 20 | 20.0 | 8 | - |
| LA,W | 1,655 | 12.8 | 571 | 9.2 | 1,015 | 12.8 | 29 | 20.0 | 40 | 25.0 |
| MS,N | 904 | 12.3 | 201 | 6.3 | 574 | 12.2 | 94 | 18.0 | 35 | 21.5 |
| MS,S | 4,010 | 6.2 | 1,871 | 6.9 | 2,065 | 6.6 | 33 | 22.4 | 41 | 18.8 |
| TX,N | 2,786 | 7.4 | 152 | 6.8 | 2,557 | 7.5 | 3 | - | 54 | 20.0 |
| TX,E | 1,737 | 9.0 | 335 | 4.3 | 1,328 | 10.1 | 37 | 12.5 | 37 | 15.0 |
| TX,S | 4,353 | 8.8 | 1,201 | 5.6 | 2,280 | 8.3 | 787 | 10.8 | 85 | 19.4 |
| TX,W | 2,362 | 9.5 | 597 | 7.5 | 1,695 | 10.7 | 20 | 11.0 | 50 | 16.0 |
| **6TH** | **33,681** | **23.4** | **3,878** | **5.3** | **11,187** | **10.9** | **18,375** | **101.3** | **261** | **24.0** |
| KY,E | 1,852 | 9.3 | 232 | 5.5 | 1,591 | 10.1 | 19 | 21.0 | 10 | 19.5 |
| KY,W | 1,259 | 8.7 | 223 | 7.5 | 911 | 7.8 | 115 | 17.6 | 10 | 20.0 |
| MI,E | 18,713 | 101.2 | 770 | 4.4 | 1,336 | 6.7 | 16,550 | 101.4 | 57 | 22.5 |
| MI,W | 783 | 8.0 | 126 | 3.3 | 838 | 9.0 | 8 | - | 11 | 20.0 |
| OH,N | 5,491 | 13.5 | 944 | 3.3 | 3,728 | 19.8 | 779 | 10.2 | 40 | 19.5 |
| OH,S | 2,237 | 12.8 | 916 | 10.8 | 855 | 12.4 | 421 | 14.5 | 43 | 25.4 |
| TN,E | 1,148 | 12.7 | 177 | 6.0 | 499 | 9.4 | 442 | 16.9 | 30 | 25.0 |
| TN,M | 1,241 | 10.2 | 136 | 3.8 | 1,063 | 11.3 | 14 | 16.0 | 28 | 22.0 |
| TN,W | 957 | 11.8 | 352 | 8.2 | 546 | 12.9 | 27 | 22.5 | 32 | 25.5 |
| **7TH** | **13,032** | **7.2** | **3,901** | **5.6** | **7,664** | **7.9** | **1,382** | **12.1** | **245** | **25.0** |
| IL,N | 6,598 | 6.5 | 2,360 | 5.0 | 3,632 | 6.9 | 503 | 12.0 | 103 | 28.0 |
| IL,C | 745 | 8.7 | 297 | 7.5 | 425 | 8.3 | 10 | 22.0 | 13 | 27.0 |
| IL,S | 839 | 8.4 | 224 | 6.9 | 576 | 8.5 | 21 | 20.8 | 18 | 20.0 |
| IN,N | 1,264 | 10.8 | 238 | 5.4 | 705 | 9.5 | 297 | 16.0 | 24 | 20.0 |
| IN,S | 2,114 | 10.9 | 556 | 6.7 | 1,246 | 10.3 | 282 | 13.9 | 30 | 23.0 |
| WI,E | 1,030 | 8.8 | 171 | 3.6 | 740 | 8.0 | 83 | 14.0 | 36 | 66.0 |
| WI,W | 442 | 4.4 | 55 | 2.5 | 180 | 3.0 | 166 | 5.0 | 21 | 11.4 |
| **8TH** | **14,870** | **11.1** | **4,420** | **5.8** | **6,080** | **9.9** | **4,103** | **37.3** | **267** | **20.9** |
| AR,E | 1,532 | 12.4 | 326 | 11.7 | 1,143 | 12.4 | 11 | 15.0 | 52 | 19.7 |
| AR,W | 767 | 11.9 | 74 | 10.0 | 639 | 12.6 | 29 | 1.0 | 25 | 14.8 |
| IA,N | 436 | 10.7 | 69 | 5.8 | 357 | 10.2 | 3 | - | 17 | 23.0 |
| IA,S | 608 | 10.4 | 117 | 8.0 | 342 | 8.4 | 126 | 16.4 | 23 | 21.0 |
| MN | 6,266 | 23.8 | 1,803 | 3.4 | 562 | 5.3 | 3,869 | 37.6 | 32 | 26.5 |
| MO,E | 2,171 | 7.4 | 771 | 7.4 | 1,357 | 7.8 | 1 | - | 42 | 21.2 |
| MO,W | 1,967 | 8.2 | 1,020 | 6.6 | 904 | 9.4 | 20 | 18.0 | 23 | 23.5 |
| NE | 688 | 9.6 | 38 | 1.0 | 583 | 8.1 | 31 | 20.5 | 36 | 23.5 |
| ND | 195 | 11.8 | 75 | 6.3 | 104 | 12.9 | 3 | - | 13 | 23.0 |
| SD | 240 | 10.5 | 137 | 8.4 | 89 | 11.7 | 10 | 20.0 | 4 | - |

194

# Table C-5. (September 30, 2006—Continued)

| Circuit and District | Total Cases | | No Court Action | | Court Action | | | | | |
| | | | | | Before Pretrial | | During or After Pretrial | | Trial | |
| | Number of Cases | Median Time Interval in Months | Number of Cases | Median Time Interval in Months | Number of Cases | Median Time Interval in Months | Number of Cases | Median Time Interval in Months | Number of Cases | Median Time Interval in Months |
|---|---|---|---|---|---|---|---|---|---|---|
| | 28,221 | 8.5 | 16,667 | 6.8 | 15,412 | 9.5 | 1,651 | 14.0 | 491 | 25.9 |
| **9TH** | | | | | | | | | | |
| AK | 303 | 9.2 | 92 | 7.3 | 206 | 10.4 | 1 | - | 4 | - |
| AZ | 1,991 | 11.8 | 801 | 9.1 | 1,099 | 11.4 | 38 | 20.8 | 53 | 32.8 |
| CA,N | 4,740 | 7.4 | 2,384 | 5.9 | 1,044 | 6.7 | 1,251 | 12.0 | 61 | 27.0 |
| CA,E | 2,116 | 10.1 | 849 | 7.1 | 1,218 | 12.2 | 25 | 20.5 | 24 | 31.0 |
| CA,C | 8,851 | 7.2 | 3,353 | 6.2 | 5,266 | 8.7 | 85 | 19.0 | 147 | 21.7 |
| CA,S | 1,813 | 6.6 | 131 | 2.7 | 1,659 | 7.6 | 2 | - | 21 | 26.0 |
| HI | 634 | 9.3 | 355 | 7.2 | 204 | 8.2 | 57 | 17.0 | 18 | 25.0 |
| ID | 470 | 13.8 | 50 | 3.9 | 387 | 13.3 | 42 | 23.0 | 11 | 29.5 |
| MT | 485 | 11.7 | 193 | 10.0 | 210 | 9.4 | 63 | 17.0 | 19 | 27.5 |
| NV | 1,494 | 9.1 | 739 | 9.2 | 717 | 10.5 | 15 | 10.0 | 23 | 30.5 |
| OR | 1,905 | 11.6 | 640 | 9.9 | 1,188 | 11.5 | 16 | 15.0 | 61 | 24.5 |
| WA,E | 533 | 8.1 | 170 | 5.7 | 319 | 9.5 | 30 | 15.5 | 14 | 17.5 |
| WA,W | 2,815 | 9.1 | 885 | 6.2 | 1,879 | 11.1 | 20 | 16.0 | 31 | 19.4 |
| GUAM | 38 | 13.0 | 11 | 8.0 | 20 | 6.0 | 5 | - | 2 | - |
| NMI | 33 | 8.6 | 14 | 7.0 | 16 | 8.4 | 1 | - | 2 | - |
| **10TH** | 7,982 | 9.8 | 1,259 | 6.7 | 5,213 | 8.0 | 1,332 | 12.2 | 178 | 21.2 |
| CO | 2,088 | 8.8 | 55 | 4.4 | 1,856 | 7.2 | 129 | 19.9 | 48 | 30.5 |
| KS | 1,164 | 9.5 | 375 | 7.2 | 630 | 8.8 | 131 | 18.1 | 28 | 21.0 |
| NM | 1,089 | 10.7 | 97 | 6.4 | 494 | 9.9 | 479 | 11.0 | 19 | 18.5 |
| OK,N | 723 | 11.5 | 61 | 4.4 | 619 | 12.8 | 20 | 18.0 | 23 | 19.0 |
| OK,E | 375 | 8.0 | 221 | 7.7 | 121 | 8.6 | 22 | 9.5 | 11 | 13.0 |
| OK,W | 1,173 | 8.1 | 309 | 5.7 | 455 | 8.6 | 385 | 11.7 | 24 | 14.0 |
| UT | 1,135 | 10.3 | 82 | 5.6 | 1,013 | 10.9 | 26 | 18.0 | 14 | 28.0 |
| WY | 235 | 9.4 | 59 | 4.2 | 25 | 8.7 | 140 | 10.0 | 11 | 17.0 |
| **11TH** | 18,817 | 8.3 | 2,642 | 6.4 | 14,501 | 7.3 | 1,358 | 13.4 | 316 | 20.9 |
| AL,N | 2,322 | 9.6 | 751 | 6.5 | 1,493 | 10.2 | 42 | 18.5 | 36 | 24.0 |
| AL,M | 796 | 11.0 | 252 | 7.2 | 458 | 10.9 | 64 | 15.0 | 22 | 16.5 |
| AL,S | 581 | 8.8 | 76 | 7.9 | 471 | 8.8 | 23 | 15.2 | 9 | - |
| FL,N | 781 | 7.8 | 185 | 5.1 | 560 | 7.2 | 9 | - | 7 | - |
| FL,M | 4,752 | 8.6 | 478 | 5.5 | 4,100 | 8.4 | 102 | 16.7 | 72 | 19.8 |
| FL,S | 5,287 | 6.7 | 57 | 2.6 | 4,748 | 5.0 | 378 | 7.6 | 84 | 17.2 |
| GA,N | 3,083 | 9.5 | 582 | 5.9 | 1,724 | 8.0 | 717 | 13.6 | 60 | 23.0 |
| GA,M | 700 | 11.3 | 137 | 8.8 | 540 | 12.5 | 5 | - | 18 | 22.0 |
| GA,S | 555 | 8.0 | 122 | 5.2 | 407 | 8.8 | 18 | 29.7 | 8 | - |

NOTE: MEDIAN TIME INTERVALS NOT COMPUTED WHEN FEWER THAN 10 CASES REPORTED. THIS TABLE EXCLUDES LAND CONDEMNATIONS, PRISONER PETITIONS, DEPORTATION REVIEWS, RECOVERY OF OVERPAYMENTS, AND ENFORCEMENT OF JUDGMENTS. FOR FISCAL YEARS PRIOR TO 2001, THIS TABLE INCLUDED DATA ON RECOVERY OF OVERPAYMENTS AND ENFORCEMENT OF JUDGMENTS.