IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| POWER DISTRIBUTION, INC.,<br><br> Plaintiff,<br><br>vs.<br><br>DANAHER CORPORATION,<br><br> Defendant. | **DEFENDANT'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS OR IN THE ALTERNATIVE TO TRANSFER TO THE EASTERN DISTRICT OF VIRGINIA**<br><br>Civil Action No. 1:07cv00351<br><br>Judge Ellen Segal Huvelle |

  Defendant Danaher Corporation ("Danaher"), by and through its counsel of record, hereby submits this Reply in Support of its Motion to Dismiss or in the Alternative to Transfer to the Eastern District of Virginia.

  Power Distribution Inc.'s ("PDI") Opposition to Danaher's Motion to Dismiss or in the Alternative to Transfer to the Eastern District of Virginia ("Opposition") is more noteworthy for what it ignores than for what it addresses. PDI fails to set forth any basis to allow this suit to proceed against Danaher in this forum.

  Most notably, PDI does not contest Danaher's motion to transfer this action to the United States District Court for the Eastern District of Virginia. Transfer is eminently appropriate in this case because, among other reasons, the Eastern District of Virginia, Richmond Division, is where both PDI and the real party in interest Danaher Power Solutions ("DPS") are headquartered, and where the actions giving rise to this suit occurred.

  Further, dismissal of this action under Fed. R. Civ. P. 12(b)(6) is appropriate because PDI has failed to state a claim against Danaher. PDI's argument that Danaher is liable for

infringement because it maintains a website through which customers may link to a DPS website containing a description of the accused product is unavailing for two reasons.  First, the description that PDI contends constitutes an offer to sell is on DPS's, not Danaher's, website.  Second, the description cannot qualify as an offer to sell in any event because it does not include a price quotation, and orders for the accused product are not accepted through the website.  In addition, PDI still fails to allege sufficient facts to ignore the multiple, separate legal entities between Danaher and DPS to hold Danaher liable for the alleged infringing acts of DPS.

In sum, PDI's Opposition does nothing to change the fact that it has sued the wrong defendant in the wrong forum.  Accordingly, PDI's Complaint should be dismissed for failure to state a claim against Danaher, or, alternatively, this action should be transferred to the Eastern District of Virginia.

## ARGUMENT

**I.     PDI DOES NOT CONTEST DANAHER'S MOTION TO TRANSFER THIS CASE TO THE EASTERN DISTRICT OF VIRGINIA, A MORE CONVENIENT AND APPROPRIATE FORUM FOR RESOLUTION OF THIS DISPUTE.**

Markedly absent from PDI's Opposition is any response to Danaher's alternative motion to transfer this case to the United States District Court for the Eastern District of Virginia, Richmond Division, where both PDI and DPS reside and where DPS's declaratory judgment suit is pending, *Danaher Power Solutions, L.L.C. v. Power Distribution, Inc.*, Case No. 3:07cv167-HEH.  Thus, the Court can and should treat the motion to transfer as conceded under Local Rule 7(b).

PDI's failure to respond to Danaher's motion to transfer is understandable; no sound argument exists to oppose transfer to PDI's home forum under 28 U.S.C. § 1404(a).  PDI cannot dispute that the Eastern District of Virginia, Richmond Division, is a "district or division where [this case] might have been brought."  28 U.S.C. § 1404(a).  Moreover, PDI does not dispute that "considerations of convenience and the interest of justice weigh in favor of transfer" to the Eastern District of Virginia, Richmond Division.  *Liban v. Churchey Group II, L.L.C.*, 305 F. Supp. 2d 136, 139 (D.D.C. 2004) (quotations omitted).  Indeed, PDI contests none of the following facts, contained in the Declaration of DPS President Chris Tecca and in Defendant's Memorandum in Support of its Motion to Dismiss or, in the Alternative, to Transfer to the Eastern District of Virginia ("Opening Memorandum'), that support transfer:

- Both PDI and DPS are headquartered in Richmond.  Their corporate offices are located less than four miles apart.  Opening Memorandum at 4; Tecca Declaration, ¶ ¶ 2, 4.

- The inventor of the '516 Patent, Mr. Kammeter, a PDI employee, resides in the Richmond Division of the Eastern District of Virginia.  Opening Memorandum at 2, 10.

- The vast majority of relevant employees and potential witnesses reside in Richmond.  Opening Memorandum at 10; Tecca Declaration, ¶ ¶ 4, 6.

- All or nearly all of the documents relating to the '516 Patent and the accused CYBEREX® Branch Circuit Management system are located in Richmond.  Opening Memorandum at 10-11; Tecca Declaration, ¶ ¶ 4, 6.

- The CYBEREX® Branch Circuit Management system was developed by DPS primarily in Richmond, is manufactured by DPS in Richmond, and is sold and distributed by DPS from Richmond.  Opening Memorandum at 3, 10; Tecca Declaration, ¶ ¶ 6, 10.

- Meetings between DPS and PDI concerning the alleged infringement took place in Richmond.  Opening Memorandum at 2-3; Tecca Declaration, ¶ ¶ 5, 8.

3

- The Eastern District of Virginia has a less congested docket than the District of Columbia, and transfer will hasten, rather than delay, the trial of this matter. Opening Memorandum at 11 & Ex. C thereto.

Further, PDI does not contest that DPS is at least a necessary party to this action because it developed, manufactures, markets, and distributes the accused product. Yet, DPS is not subject to personal jurisdiction in this jurisdiction. Apparently recognizing this fact, PDI has not sought to join DPS in this action because any attempted joinder would be futile and would serve to only further underscore that the center of gravity for this case is Richmond, Virginia, not the District of Columbia.

In sum, PDI has failed to oppose Danaher's motion to transfer or to contest that the convenience of the parties and the interest of justice would be served by transferring this action to the Eastern District of Virginia, Richmond Division. Accordingly, even if the Court does not dismiss PDI's claims for failure to state a claim against Danaher, the Court should grant Danaher's motion to transfer this matter to the United States District Court for the Eastern District of Virginia so that it can be consolidated with the case pending there, *Danaher Power Solutions, L.L.C. v. Power Distribution, Inc.*, Case No. 3:07cv167-HEH.

## II. PDI'S COMPLAINT SHOULD BE DISMISSED FOR FAILURE TO STATE A CLAIM BECAUSE PDI FAILS TO CONNECT DANAHER TO THE ALLEGED INFRINGEMENT OF WHICH PDI COMPLAINS.

PDI's various attempts to connect Danaher to the alleged patent infringement are unavailing, requiring dismissal of this action.

### A. Danaher Is Not the Proper Defendant in This Infringement Action Even Though Its Website Links to a DPS Website Containing a Description of the Accused Product.

4

Apparently abandoning the allegations contained in its Complaint, PDI now incorrectly maintains that it can sue Danaher for patent infringement because the Danaher Corporation website provides links to the websites of its various first, second and third-tier subsidiaries, including a DPS website on which the accused product is described. These allegations have no correlation to the facts alleged in PDI's Complaint and are unavailing in any event.

PDI's Complaint asserted that "an official of PDI discovered product brochures and specification of Danaher offering for sale a branch circuit monitor" at an industry trade show and that the "brochures, specifications and sales booth constitute an offer for sale of the invention covered by the '516 Patent." Complaint at ¶ 11. After Danaher's Motion to Dismiss pointed out the obvious—that the entity that attended the trade show was DPS, not Danaher—PDI has apparently abandoned its original position, relying now on the mere fact that Danaher Corporation's website contains links to its various diverse subsidiary corporations as a basis for suggesting that Danaher has offered the accused product for sale. PDI's new argument fails for two reasons: (1) providing a link to a subsidiary's website is not the same thing as listing the item on your own website, and (2) describing a product on a website does not constitute an offer to sell under the patent laws in any event.

PDI attempts to make much of the fact that a customer who logs on to Danaher's website, www.danaher.com, could, through a series of navigational moves, link to a DPS website containing a description of the accused product. The fact remains, however, that the product description is not located on the Danaher website but on www.cyberex.com, a website maintained by DPS for products under the Cyberex brand name. The description of the accused product is not found on Danaher's website and is not being advertised by Danaher any more than

the advertisement for the Historical Society of the District of Columbia Circuit's book, *Calmly to Poise the Scales of Justice*, is found on this Court's website or is being offered for sale by this Court merely because the Court's website provides a link to the Historical Society's website.[1] Unsurprisingly, PDI cites no authority for the proposition that an entity that maintains a website with links to other websites can be held liable for information displayed through those linked websites.

      Second, it is well established that mere descriptions of products without price quotations are not offers to sell under 35 U.S.C. § 271(a), and DPS's website does not include a price for the accused product. Indeed, the primary case on which PDI relies for its "offer-to-sell" argument, *Biometrics, L.L.C. v. New Womyn, Inc.*, 112 F. Supp. 2d 869 (E.D. Mo. 2000), does not support PDI because it holds that an offer to sell under section 271(a) must include both "(1) the description of the product, **and** (2) **a price at which it can be purchased**." *Id.* at 873 (citing *3D Sys., Inc. v. Aarotech Labs., Inc.*, 160 F.3d 1373, 1379 (Fed. Cir. 1998)) (emphasis added); *see also Air Turbine Tech., Inc. v. Atlas Copco AB*, 295 F. Supp. 2d 1334, 1341-42 (S.D. Fla. 2003) ("[T]his Court concludes that a catalog or website that does not contain pricing information does not constitute an offer to sell."); *Lucent Techs., Inc. v. Newbridge Networks Corp.*, 168 F. Supp. 2d 181, 229 (D. Del. 2001) ("[T]he Court is reluctant to conclude that these web advertisements are sufficient, in and of themselves, to constitute an offer to sell, because they do not contain pricing information and/or other ordering information."); *VP Intellectual Props., L.L.C. v. IMTEC Corp.*, 1999 WL 1125204, at *5-6 (D.N.J. Dec. 9, 1999) (holding that

---

[1]     In the same way that a customer can navigate through several links to get from Danaher's website to a website maintained by DPS for products under the Cyberex brand, visitors to this Court's website (http://www.dcd.uscourts.gov/links.html) can navigate through several links to the website for the Historical Society of the District of Columbia Circuit, which advertises the sale of the book *Calmly to Poise the Scales of Justice*.

an Internet site containing product descriptions but no pricing information was not an offer to sell).

Finally, PDI incorrectly argues that Danaher has made an offer to sell the accused product because the DPS website describes the allegedly infringing product and "interacts with customers and potential customers by an email link." Opposition at 7. While DPS's website does allow interested visitors to email representatives of DPS, this lone mode of interactivity does not constitute an offer to sell. The website does not invite customers to place orders by email, nor could it because the products offered by DPS are not "off-the-shelf" products; rather, they are ordered and built to the customer's specifications.

In *Zippo Mfg. Co. v. Zippo Dot Com, Inc.*, 952 F. Supp. 1119 (W.D. Pa. 1997), cited by PDI, the court describes a sliding scale of website interactivity.[2]  *Id.* at 1124. At one end are websites that allow visitors to enter into contracts with the company, and at the other end are "passive" websites that do little more than "make information available to those who are interested in it." *Id.* In the middle of the spectrum are moderately interactive websites that allow a user to exchange information with the host computer. *Id.* At most, DPS's website falls within this middle ground, as it offers a minimal level of interactivity. Significantly, however, the website does not allow users to place orders or enter into contracts over the Internet, nor does it allow the "repeated transmission of computer files over the Internet." *iAccess, Inc. v. Webcard Techs, Inc.*, 182 F. Supp. 2d 1183, 1187 (D. Utah 2002). Furthermore, unlike *Biometrics*, 112 F.

---

[2] The framework set forth in *Zippo* is typically used by courts to determine if it is appropriate to exercise personal jurisdiction over the entity operating the website. *See Zippo*, 952 F. Supp. at 1123-24. Although personal jurisdiction over Danaher in the District of Columbia is not at issue here, courts have also discussed these considerations in conjunction with whether there was an offer to sell, and PDI makes this argument in support of its contention that Danaher made an offer to sell. Accordingly, Danaher addresses this framework in the context in which it was presented by PDI.

Supp. 2d at 873, in which the defendants had direct email contact with a resident of the forum state and eventually sold that person an accused product, in this case, it is undisputed that DPS has not sold any of the allegedly infringing products to District of Columbia residents. Tecca Declaration, ¶ 3.

Accordingly, PDI's suggestion that it has properly stated an infringement claim against Danaher fails.

>B.     PDI Still Has Not Set Forth Any Basis for Ignoring Multiple Separate Legal Entities to Hold Danaher Liable for DPS's Alleged Acts of Infringement.

PDI offers no explanation for its failure to allege any basis in its Complaint to impose liability on Danaher for DPS's allegedly infringing acts. Nor has PDI addressed these absent allegations in its Opposition or sought to amend its Complaint to include such allegations. Instead, PDI merely attempts to criticize Mr. Tecca's Declaration on the ground that it "provides no basis to conclude that Mr. Tecca would have reason to have any knowledge of how Danaher (as distinguished from DPS) complies with any corporate formalities." Opposition at 4. This criticism misses the point. It is not Danaher's "corporate veil" that PDI would have to pierce. Rather, it is the separate legal entity status of DPS, Joslyn Holding Company and DH Holdings Corporation. Thus, Mr. Tecca's Declaration addresses the corporate formalities most directly at issue here, and PDI's criticism is misplaced. Mr. Tecca has direct knowledge of whether and to what extent DPS observes corporate formalities and conducts itself separately from Danaher and the other legal entities, Joslyn Holding Company and DH Holdings Corporation, that separate DPS and Danaher.

As set forth by Danaher (Opening Memorandum at 5-8) and ignored in PDI's Opposition, PDI has failed to plead any of the four tests—the "agency" test, the "alter ego" test, the

"instrumentality" test, and the "integrated enterprise" test—applied by courts to determine whether liability should be imposed on a parent for a subsidiary's actions. In addition, PDI fails to identify any inequitable result from recognizing DPS's separate legal status in this case.

The party seeking to disregard the corporate entity carries the heavy burden of "showing by affirmative proof that a unity of ownership and interest exists and that the corporation was created or used for the purpose of perpetrating fraud or wrong. Fraudulent activity will not be presumed, nor may it be based merely on suspicion, conjecture, or doubtful inference." *McAuliffe v. C & K Builders, Inc.*, 142 A.2d 605, 067 (D.C. App. 1958); *see also Material Supply Int'l, Inc. v. Sunmatch Indus. Co.*, 62 F. Supp. 2d 13, 21 (D.D.C. 1999) (placing burden of proving piercing on party that sought to hold parent corporation liable for the acts of its subsidiary).

PDI has failed to even allege minimal facts that would support disregarding the separate legal entities of DPS, Joslyn Holding Company, and DH Holdings Corporation to hold Danaher liable for the allegedly wrongful acts of DPS. Yet, such facts are essential if this action is to proceed against Danaher. Instead of attempting to meet its difficult burden, PDI points to what it believes are deficiencies in the Declaration of Mr. Tecca and asks the Court to allow jurisdictional discovery on the question. Such discovery would constitute an improper fishing expedition and would be futile, however. PDI has failed to allege, let alone establish, a prima facie case against Danaher. As set forth in Danaher's Motion and the Declaration of Mr. Tecca, no facts exist that would support the idea that these two separate corporate entities share the unity of interest and ownership requisite to piercing the multiple corporate veils at issue. Indeed, PDI's arguments in its Opposition—that Mr. Tecca is not an officer of Danaher, has never

9

visited Danaher's offices, and has never attended a shareholder meeting of Danaher, Joslyn Holding Company, or DH Holdings Corp.—merely underscore that Danaher and DPS are entirely separate, and that no justification exists for disregarding the separate legal entities. Without proper allegations by PDI, the action must be dismissed for failure to state a claim under Fed. R. Civ. P. 12(b)(6).

## CONCLUSION

For all of the foregoing reasons, Defendant Danaher respectfully requests that this Court grant its motion to dismiss PDI's Complaint against Danaher for failure to state a claim or, in the alternative, grant its motion to transfer this matter to the United States District Court for the Eastern District of Virginia (Richmond Division), so that it can be consolidated with the case pending there, *Danaher Power Solutions, L.L.C. v. Power Distribution, Inc.*, Case No. 3:07cv167-HEH.

DANAHER CORPORATION

By Counsel

TROUTMAN SANDERS, LLP
1660 International Drive, Suite 600
McLean, VA 22102
(703) 734-4356

By:   \_\_/s/ John F. Anderson_____
        John F. Anderson
        (D.C. Bar No. 393764)

Of Counsel:
David G. Mangum
PARSONS BEHLE & LATIMER
201 South Main Street, Suite 1800
Salt Lake City, UT 84111
(801) 532-1234